Jane B. Jacobs, Esq. (JJ-2925)
Khristan A. Heagle, Esq. (KH-0210)
KLEIN ZELMAN ROTHERMEL LLP
485 Madison Avenue, 15th Floor
New York, NY 10022
Tel: (212) 935-6020
Fax: (212) 753-8101
jbjacobs@kleinzelman.com
heagle@kleinzelman.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
PAUL OPPENHEIMER, Individually, :
and on Behalf of :
All Other Persons Similarly Situated, :     Case No. 07 CV 7459
:
Plaintiffs, :
:
-against- :     DEFENDANTS' ANSWER
:     AND COUNTERCLAIMS
N3K INFOMATIK, INC. a/k/a N3K, Inc., :
ALAN SWAN AND JOHN DOES #1-10, :
Joint and Severally :
:
Defendants. :
------------------------------------------------------------------ X

## DEFENDANTS' N3K INFOMATIK, INC. AND ALAN SWAN'S ANSWER TO PLAINTIFF'S COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, defendants N3K Infomatik, Inc. ("N3K") and Alan Swan ("Mr. Swan") (collectively "Defendants"), by and through their attorneys, Klein Zelman Rothermel LLP, as and for their Answer to Paul Oppenheimer's ("Plaintiff") Collective Action Complaint and Demand for Jury Trial ("Complaint"), state as follows:

## NATURE OF THE ACTION

1. Defendants admit that this purports to be a wage-and-hour action under the statutes cited in paragraph 1 of the Complaint, but otherwise deny that Plaintiff is entitled to relief under those statutes.

2. Defendants admit that this purports to be a wage-and-hour action under the statutes and regulations cited in paragraph 2 of the Complaint, but otherwise deny that Plaintiff is entitled to relief under those statutes and regulations.

## JURISDICTION AND VENUE

3. Defendants admit that Plaintiff is attempting to invoke this Court's jurisdiction pursuant to the statutes cited in the paragraph 3 of the Complaint, but otherwise aver that the allegations contained in paragraph 3 of the Complaint call for legal conclusions to which no response is required.

4. Defendants admit that Plaintiff bases venue on the statutes cited in the paragraph 4 of the Complaint, but otherwise aver that the allegations contained in paragraph 4 of the Complaint call for legal conclusions to which no response is required; Defendants further admit that N3K maintains an office in the City of New York, but deny that Mr. Swan resides in New York and each and every other allegation contained in paragraph 4 of the Complaint.

5. The allegations set forth in paragraph 5 of the Complaint call for a legal conclusion to which no response is required.

## PARTIES

6. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 6 of the Complaint.

7. Defendants admit the allegations contained in paragraph 7 of the Complaint.

8. Defendants admit that Alan Swan was an officer, director, and managing agent of N3K Infomatik, Inc., but otherwise deny the allegations set forth in paragraph 8 of the Complaint.

9. Defendants deny the allegations contained in paragraph 9 of the Complaint.

## COLLECTIVE ACTION ALLEGATIONS

10. Defendants deny the allegations contained in paragraph 10 of the Complaint.

11. Defendants deny the allegations contained in paragraph 11 of the Complaint.

12. Defendants deny the allegations contained in paragraph 12 of the Complaint.

13. Defendants deny the allegations contained in paragraph 13 of the Complaint.

14. Defendants deny the allegations contained in paragraph 14 of the Complaint as well as the allegations contained in subpart(s) (a), (b), (c), (d), (e), and (f).

15. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 15 of the Complaint.

## STATEMENT OF THE FACTS

16. Defendants admit the allegations contained in paragraph 16 of the Complaint.

17. Defendants admit that Plaintiff worked on some occasions at N3K's offices located at 1001 6th Avenue, New York, New York 10018, but deny each and every other allegation contained in paragraph 17 of the Complaint.

18. Defendants admit the allegations contained in paragraph 18 of the Complaint.

19. Defendants deny the allegations contained in paragraph 19 of the Complaint.

20. Defendants deny the allegations contained in paragraph 20 of the Complaint.

21. Defendants deny the allegations contained in paragraph 21 of the Complaint.

22. Defendants admit the allegations contained in paragraph 22 of the Complaint.

23. Defendants deny the allegations contained in paragraph 23 of the Complaint.

24. Defendants deny the allegations contained in paragraph 24 of the Complaint.

25. Defendants deny the allegations contained in paragraph 25 of the Complaint.

26. Defendants deny the allegations contained in paragraph 26 of the Complaint.

27. Defendants deny the allegations contained in paragraph 27 of the Complaint.

28. Defendants deny the allegations contained in paragraph 28 of the Complaint.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT**

29. Defendants incorporate by reference each and every forgoing paragraph as if fully set forth herein.

30. The allegations contained in paragraph 30 of the Complaint call for a legal conclusion of law to which no response is required. To the extent a response is required, Defendants admit that Defendant N3K has been and continues to be an employer engaged in interstate commerce, but deny the rest of the allegations contained in paragraph 30.

31. The allegations contained in paragraph 31 of the Complaint call for a conclusion of law to which no response is required. To the extent a response is required, Defendants deny the allegations contained in paragraph 31 of the Complaint, but admit that N3K previously employed Plaintiff.

32. Defendants admit the allegations contained in paragraph 32 of the Complaint.

33. The allegations contained in paragraph 33 of the Complaint call for a conclusion of law to which no response is required. To the extent that a response is required, Defendants admit that a written consent has been attached to the Complaint.

34. Defendants deny the allegations contained in paragraph 34 of the Complaint.

35. Defendants deny the allegations contained in paragraph 35 of the Complaint.

36. Defendants deny the allegations contained in paragraph 36 of the Complaint.

37. Defendants deny the allegations contained in paragraph 37 of the Complaint.

38. Defendants deny the allegations contained in paragraph 38 of the Complaint.

## SECOND CLAIM FOR RELIEF
## NEW YORK STATE LABOR LAW

39. The Defendants incorporate by reference each and every forgoing paragraph as if fully set forth herein.

40. The allegations contained in paragraph 40 of the Complaint call for a conclusion of law to which no response is required. To the extent that a response is required, the Defendants deny the allegations contained in paragraph 40 of the Complaint.

41. Defendants deny the allegations contained in paragraph 41 of the Complaint.

42. Defendants deny the allegations contained in paragraph 42 of the Complaint.

43. Defendants deny the allegations contained in paragraph 43 of the Complaint.

## PRAYER FOR RELIEF

44. As to the unnumbered paragraph listed under the Heading "Prayer For Relief", as well as in the paragraphs underneath this paragraph noted as (a), (b), (c), (d), (e), (f), (g), and (h), Defendants deny that Plaintiff is entitled to any form of relief.

## AFFIRMATIVE DEFENSES

45. Without admitting any of the allegations contained in the Complaint and/or assuming the burden of proof as to any of the following defenses where the law does not impose such burden on the defendants, Defendants allege as follows:

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

46. The Complaint, in whole or in part, fails to state a claim upon which relief may be granted or for which the relief or recovery sought can be awarded.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

47. At all relevant times hereto, Defendants acted in good faith and did not violate any rights of Plaintiff under federal, state or local laws, rules, regulations or guidelines.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

48. The Complaint is barred, in whole or in part, by the applicable statute of limitations to the extent that it is based upon events occurring outside of such time period.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

49. Plaintiff was exempt from the overtime and minimum wage requirements set forth by the Fair Labor Standards Act, including but not limited to the Administrative Exemption as set forth within 29 C.F.R. Part 541.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

50. Defendants' believed in good faith and had reasonable grounds to believe that its conduct was in compliance with the Fair Labor Standards Act, therefore, liquidated damages are not appropriate. See 29 U.S.C. § 260.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

51. Defendants did not employ any individuals who were and/or are similarly situated to Plaintiff.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

52. Plaintiff is not an adequate representative in any collective and/or potential class action and as such, should not be part of any action brought under the FLSA or New York law.

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

53. The Complaint is barred, in whole or in part, pursuant to 29 U.S.C. §§ 258(a) and 259(a), because Defendants have, in good faith, acted in conformity with and in reliance upon written administrative regulations, interpretations, and opinion letters with respect to some or all of the acts or omissions alleged in the First Amended Complaint.

### COUNTERCLAIMS

Pursuant to Federal Rule 13(a), Defendant N3K brings the following counterclaims against Plaintiff, Paul Oppenheimer:

### NATURE OF COUNTERCLAIMS

54. These counterclaims arise from the repeated and deliberate conduct of Plaintiff Paul Oppenheimer, which occurred on or about January 14, 2007.

55. In the days leading up to his voluntary resignation from N3K and only days before starting a job with Blue Cat Networks, Inc., an entity which competes with N3K for a share of the same limited market space, Plaintiff intentionally accessed N3K's computers, computer servers, databases, and databases to which N3K retained limited license (collectively "Computer Servers") in order to misappropriate and transmit N3K's secret, confidential, and proprietary information, including, but not limited to, compiled and organized lists of N3K customers, prospective customers, and/or business connections (collectively "Proprietary Lead Lists").

56. Upon accessing the Computer Servers, Plaintiff transmitted via e-mail copies of Proprietary Lead Lists to his personal e-mail account.

57. Upon information and belief, Plaintiff engaged in such conduct so that he could then use the Proprietary Lead Lists to his competitive advantage while performing services for Blue Cat Networks, Inc.

58. Upon information and belief, while subsequently employed by Blue Cat Networks, Inc., Plaintiff actually used the Proprietary Lead List to unfairly compete with N3K.

## FACTS

59. Within the United States, Defendant N3K provides technology services to a variety of businesses. Specifically, N3K is a leading global provider of DNS, DHCP, and IPAM solutions.

60. In order to stay competitive in the market space, N3K relies upon its Proprietary Lead Lists, which may often list and otherwise organize information relating to N3K customers, prospective customers, and other business contacts.

61. N3K spends considerable time and money creating and maintaining Proprietary Lead Lists, including but not limited to the costs associated with attending and renting booths at industry trade shows, where some leads are generated.

62. N3K also spends considerable sums of money to purchase Proprietary Lead Lists from third parties.

63. N3K considers Proprietary Lead Lists to be secret, confidential, and proprietary.

64. The Proprietary Lead Lists are the property of N3K.

65. At N3K's New York location, the access to the Computer Servers is limited to N3K personnel.

66. N3K spends considerable time and money to ensure that the Computer Servers are protected and not accessed by unwelcome third-parties, such as competitors.

67. Upon information and belief, in the days immediately before Plaintiff voluntarily resigned from his employment at N3K, Plaintiff accessed the Computer Servers to gain access to several Proprietary Lead Lists.

68. Upon information and belief, while Plaintiff was employed by N3K, he used and/or had access to the e-mail account oppenheimer1221@gmail.com.

69. Upon information and belief, Plaintiff subsequently transmitted by e-mail multiple Proprietary Lead Lists from his N3K provided e-mail account or another e-mail account to which he had access, to the address oppenheimer1221@gmail.com, including but not limited to one Proprietary Lead List that was over four-hundred and fifty pages long and contained the names, titles, and phone numbers of over three thousand individuals.

70. Upon information and belief, approximately days after his resignation, Plaintiff began employment with Blue Cat Networks, Inc..

71. Blue Cat Networks, Inc. competes with N3K for a share of the same limited market space.

72. Upon information and belief, Plaintiff actually used the various Proprietary Lead Lists that he transmitted to himself while he was an employee of N3K to contact individuals and to create business on behalf of Blue Cat Networks, Inc.

### DEFENDANT N3K'S FIRST CLAIM FOR RELIEF

(Violation of 18 U.S.C. §1030, the Computer Fraud and Abuse Act)

73. Defendant N3K incorporates by reference each and every forgoing paragraph as if fully set forth herein.

74. N3K's computer system and the Computer Servers are, and at all relevant time have been, used in interstate commerce and foreign commerce and communication, and is thus a "protected computer" under the CFAA. See 18 U.S.C. § 1032(e)(2).

75. Prior to resigning from N3K, Plaintiff knowingly accessed N3K's protected computers in an unauthorized manner and/or in excess of the authorized access he had been afforded, to obtain and cause the transmission of N3K's information and materials, including but not limited to detailed Proprietary Lead Lists, in order to make such materials available for his use at Blue Cat Networks, Inc.

76. In doing so, Plaintiff intentionally, and without authorization caused damage to N3K's protected computer by, *inter alia*, impairing the integrity of N3K's Computer Servers, resulting in losses to N3K in an amount to be proven at trial, but which in any event will, upon

information and belief, exceed the statutory annual threshold of $5,000.00. See 18 U.S.C. § 1030(a)(5)(B)(I).

77. Upon information and belief, the Plaintiff accessed N3K's protected computers without, or in excess of, authorization. Upon information and belief, this conduct was done knowingly and with the intent to wrongfully transmit confidential and proprietary business information belonging to N3K.

78. Upon information and belief, this conduct was undertaken in furtherance of the intended torts described herein, and resulted in Plaintiff obtaining items of value, including but not limited to the Proprietary Lead Lists, in violation of 18 U.S.C. § 1030(a)(4).

79. Without the exclusive benefit and use of the Proprietary Lead Lists that were purloined from N3K's Computer Servers, N3K has, as a result, suffered injury from Plaintiff's violations of the CFAA in an amount to be determined at trial.

## DEFENDANTS N3K'S SECOND CLAIM FOR RELIEF

### (Unfair Competition)

80. Defendant N3K incorporates by reference each and every forgoing paragraph as if fully set forth herein.

81. Since January 2007, Plaintiff has competed and continued to actively and directly compete against N3K by unfair and wrongful means that include, among other things, the misappropriation and wrongful disclosure and/or utilization of N3K's confidential and proprietary business information, including but not limited to Proprietary Lead Lists.

82. As a direct and proximate result thereof, Plaintiff has caused N3K to lose market reputation and standing, business, business opportunities, profit and opportunities for profit that N3K would have had but for Plaintiff's wrongful and unfair competition.

83. As a result of the aforementioned wrongful conduct, N3K has been harmed and will continue to harmed.

84. As relief, Defendant N3K seeks to compensated for its losses in an amount to be determined at trial.

## DEFENDANT N3K'S THIRD CLAIM FOR RELIEF

### (Tortious Interference with Business Relationships)

85. Defendant N3K incorporates by reference each and every forgoing paragraph as if fully set forth herein.

86. Plaintiff has used and continues to use dishonest, unfair, and improper means to intentionally interfere were N3K's current and expected advantageous business and contractual relationships.

87. As a direct and proximate result of defendants' use of unfair and wrongful means, N3K has and will continue to be damaged in an amount to be determined at trial.

## CONCLUSION

WHEREFORE, N3K respectfully requests that this Court issue an order:

(A)   enjoining Plaintiff from using, disclosing, communicating, copying, deleting, destroying or removing any N3K confidential or proprietary information in any hard copy or electronic files in the possession, custody or control of the Plaintiff;

(B)   awarding N3K compensatory damages in an amount to be determined at trial;

(C) awarding N3K its attorneys' fees and costs and expenses of this litigation; and

(D) granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Defendant N3K demands a trial by jury upon its counterclaims, to fullest extent permitted under applicable law.

New York, New York
October 9, 2007

Respectfully submitted,

KLEIN ZELMAN ROTHERMEL LLP

By: _____
Jane B. Jacobs (JJ - 2925)
Khristan Heagle (KH - 0210)
Attorneys for Defendants
485 Madison Avenue
New York, New York 10022
(212) 935-6020